C O P Y



## THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN, TEXAS

Grover Sellers

~~PRICE DANIEL~~
ATTORNEY GENERAL

Overruled by V-32
and withdrawn.

Hon. Alfred M. Clyde
District Attorney
Tarrant County
Fort Worth, Texas

Dear Sir:

Opinion No. 0-7403
Re: Whether the Euless Independent
School District can make its levy
of fifty cents on the $100.00 valua-
tion, as certified for 1946, and
fifty cents for debt service, and
retain its State Aid.

Your letter of September 11, 1946, requesting our opinion reads as follows:

"On May 18, 1946, a special election was held in Euless Independent School District (Tarrant County) to vote on the question of issuing school-building and gymnasium bonds in the amount of $55,000.00. This election resulted favorably for the issuance of the bonds by a majority vote of approximately four to one. Such election was ordered by the Board of Trustees after our present building and health facilities were condemned by Health Authorities.

"The Euless Independent School District is a State Aid District, and the State pays that portion of local maintenance above that amount produced by our local maintenance tax; however, it has been their policy not to permit districts receiving this aid to reduce their local maintenance tax. The Euless Independent School District has heretofore levied a maintenance tax of $0.75 on the $100.00 valuation and a tax of $0.25 on the $100.00 valuation for interest and sinking fund. The assessed valuation for 1945, which was our highest assessed valuation for several years, amounted to $467,-907.00. A rate of $0.75, if collected 100%, produced the sum of $3,509.30.

"The assessed valuation for taxation for the year 1946, as certified, has been increased to $1,066,775. A tax rate of $0.50 on the $100.00 valuation is necessary to service the new debt and the present outstanding bonds, and it is the desire of the Board of Trustees to levy $0.50 for debt service and $0.50 for local maintenance.

"A rate of $0.50, if collected 100%, on the 1946 assessed valuation will produce the sum of $5,333.87 for local maintenance, as compared to the sum of $3,509.30 produced by last year's levy, which was also the highest of any year for several previous years.

"The Board of Trustees has proceeded on its present program on the theory that the actual rate levied has little or no significance, and that the amount of tax produced in dollars and cents is the controlling factor. Whereas the rate itself will be reduced by $0.25 on the $100.00 valuation, the actual tax to be derived from this levy is in excess of 50¢ greater than that produced in previous years.

"The State Department of Education has suggested that the matter be referred to your office. The question is: 'Can the Euless Independent School District make its levy of $0.50 on the $100.00 valuation, as certified for 1946, and $0.50 for debt service, and retain its State Aid?'

"It will be appreciated if you will mail a copy of your opinion to the State Department of Education.

"Due to the fact that requests for State Aid must be in not later than October 1st, Mr. S. W. Mills, President, Board of Trustees, Euless Independent School District, will present this in person."

The first paragraph of Sec. 2 of Art. I, S.B. 167, Ch. 361, 49th Leg., 1945, Regular Session, commonly known as the current Rural Aid Law, provides as follows:

"Sec. 2. Tax Levy. No school district shall be eligible to receive any type of aid authorized under the provisions of this Act unless it shall be providing for the annual support of its schools by voting, levying, and collecting for the current school year a local maintenance school tax of not less than Fifty Cents (50¢) on the One Hundred Dollars ($100.00) of property valuation in the entire district. The property valuations shall not be less than said property is valued for state and county purposes. The income from such a maintenance tax in excess of the required Fifty Cents (50¢) maintenance tax must first be used to retire indebtedness, if any, in the local and Equalization (Rural Aid) school funds. After the indebtedness in these funds, if any, has been retired, the income from this maintenance tax in excess of the required Fifty Cents (50¢) maintenance tax may be used at the discretion of the local school authorities of the district for any lawful school purpose except increasing or supplementing any teacher's or administrative salaries. Any or all

maintenance tax above Fifty Cents (50¢) may not be included in the calculation of need for aid, but shall be reported in the budget with an itemized statement of its expenditure. If the income from the maintenance tax above Fifty Cents (50¢) is not spent as prescribed herein, it shall be included as receipts in the budget. In order to comply with the terms of this section, it shall be necessary for such school districts applying for any type of aid authorized under the terms of this Act, to report all valuations within such districts, including all consolidated districts and annexed districts, and failure to report all such valuations shall prevent such district from receiving any type of aid authorized under this Act."

The second paragraph of the above Article contains a prohibition against reducing the tax rate in the following language:

"No school district will be eligible for aid under the provisions of this Act which has reduced its tax rate within the two years immediately preceding the year for which aid is applied for hereunder or which has reduced its tax valuation in order to show budgetary need."

In order to determine the eligibility to receive State Aid, we must analyze the above Acts. The subject matter of the first paragraph, Sec. 2, of Art. I, supra, may be divided into two parts: the first dealing with the minimum maintenance tax rate, and the second with the excess tax rate above the minimum required. The minimum, as set out above, is fifty cents on the One Hundred Dollars valuation for maintenance, and the state of facts before us come within that requirement.

The remainder of the Act deals with the excess over and above the minimum fifty cents maintenance tax rate and its use. First, it is to be used to retire indebtedness, if any exists, and then broad discretionary powers are granted to the Board of Trustees to use the excess, with certain enumerated exceptions. The next provision provides that the maintenance tax above fifty cents shall not be included in calculations for aid.

In the first paragraph dealing with maintenance tax rate, the word "maintenance" is used four times to describe the kind of tax. In the second paragraph of the Act, which contains the prohibition against reducing the tax rate, the word "maintenance" is omitted and, as such, we must interpret as meaning the over-all tax rate and not the maintenance tax rate only.

This conclusion finds support in the incongruous results stemming from the opposite conclusion. Many districts have paid out their school-houses, and levy for local maintenance the total tax allowed by law therefor. As the maximum maintenance tax allowed is likewise the total allowed by law for both bonds and maintenance together, it is apparent that such a district, in event of loss of its building, would be faced with the unhappy choice of not replacing its house or of losing equalization aid should it do so through the issuance of bonds, regardless of how necessary that expedient might be.

From the state of facts presented us, neither the over-all tax rate nor the tax valuation has been reduced and the prohibition in the second paragraph is not applicable. It is therefore our opinion, under the state of facts presented, that the Euless Independent School District did not become ineligible to receive State Aid.

Very truly yours

ATTORNEY GENERAL OF TEXAS

(signed)

By

W. P. Watts
Assistant

WPW:rt/JCP

APPROVED SEPT. 26, 1946
(signed) Grover Sellers
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION COMMITTEE
BY W.V.G., CHAIRMAN